The Union Pacfic Railway Company v. W. J. Shelley.

1. RAILROAD COMPANY — *Killing Stock — Sufficient Demand.* In a statutory action to recover the value of two horses killed by a railway company in the operation of its trains, a demand is sufficient where it is established that the plaintiff goes to a station agent of the company 30 days before suit is brought and informs such agent that he wants to make a demand for the horses killed, gives a description of them, and states that they were worth $300; and the agent takes the demand down, and says, "All right;" and it further appears that such demand was transmitted to the claim agent of the company, and a settlement attempted.

2. INSTRUCTIONS — *Not Prejudicial.* Instruction as to answers to be returned to special questions examined, and found to be improper, but not prejudicial.

3. ——— *Not Misleading.* Instruction as to the condition of fence inclosing right-of-way considered, and found not to be misleading and erroneous.

*Error from Pottawatomie District Court.*

ACTION by *Shelley* against the *Railway Company*, to recover the value of two horses alleged to have been killed by the defendant. Judgment for the plaintiff, at the September term, 1889. The defendant brings the case here. The opinion states the facts.

*A. L. Williams, N. H. Loomis,* and *R. W. Blair,* for plaintiff in error :

The statute requires that demand of payment for the loss be made of the railroad company at least 30 days before suit is commenced.   Such demand was not made in this case. Did plaintiff's language amount to a demand, and did Mr. Haacke, station agent at Wamego, so consider it?   We think not.   And we think when Mr. Shelley told him he wanted to make a demand, Mr. Haacke meant by his reply, "All right — make your demand."   There is nothing to show where Mr. Haacke was when the conversation took place. For all we know he may have been away from his place of business and engaged in doing something in no way connected with the business of the railroad company, and as the language used by the plaintiff cannot be considered a formal demand, he probably paid no particular attention to the conversation, thinking the plaintiff would at some time in the future come back and make the threatened demand, when he could then forward it to the officers of the company for investigation and adjustment.   The object of the statute requiring the demand is to give the railroad company a sufficient length of time to investigate and adjust losses, and it is expected that the demand when made shall be unequivocal, and especially so when it is made of an agent holding a subordinate position, who can do nothing in the matter except report it to his superior officer.

There was also error in the following instruction, No. 11, given to the jury :

"The special findings of fact submitted to you, you will answer truthfully, according to the evidence, and if there is any of these questions of fact that you are unable to answer solely because there was no evidence submitted to you, and by which you can be directed, you may answer the same, that you do not know."

That the jury were wrongfully influenced by this instruction is shown by the fact that out of nine special questions

asked by defendant, three of them are answered, "Do not know." These answers are indefinite and uncertain, and were given by the jury because of this instruction. See *K. P. Rly. Co. v. Peavey*, 34 Kas. 486, 487; *U. P. Rly. Co. v. Fray*, 35 id. 708; *A. T. & S. F. Rld. Co. v. Cone*, 37 id. 577; *L. T. & S. W. Rly. Co. v. Jacobs*, 39 id. 210.

The sixth instruction was misleading and erroneous. The portion of the instruction we complain of is that part referring to the fence and condition thereof, at the time and place the horses crossed over into the right-of-way. The testimony shows this to have been a four-strand barbed-wire fence, with the top wire four feet from the ground. The statute makes a three-strand barbed-wire fence, with the top wire 44 inches from the ground, a legal fence. It will thus be seen that the company had a fence composed of more wires and of a greater height than demanded by the statute. This instruction mentions the top wire only, and tells the jury if they find it to have been slack, or broken, or otherwise out of repair, to find for the plaintiff. In no place does the court tell the jury what constitutes a legal fence, but on the other hand, he tells them if the top wire was slack the fence was not legal, without in any way explaining the relationship of the top wire to the other wires forming the fence, or defining the degree of slackness that would render the fence illegal. There were enough wires to have a legal fence without using the top one at all, and it was misleading to the jury to tell them that all that was necessary to make this fence illegal was for them to find that the top wire was slack or broken.

*D. V. Sprague*, for defendant in error:

The law provides no form for such a demand, and of course only requires such language to be used in making a demand as will impart the facts of the particular case to the agent of the company, and that the party injured wants payment therefor, with the amount thereof.

The only object of the demand (as stated by the opposing

counsel) is, that the company may have notice, and thereby settle the matter and avoid litigation, should it so desire. A demand that has that effect is sufficient. That demand was made in time.

But the plaintiff in error seems to think that all is overturned by the word "wanted" used by Mr. Shelley in making the demand. If Mr. Haacke did not deem it a demand, why did he write it down? Why did he say "All right?" Because he knew it was a demand, and so treated it, as did the railroad company and all other parties, save and except the learned counsel in framing their brief and searching for a way out.

In view of the evidence in this case, and of the law as established by this court in divers cases, among which are the cases cited by the plaintiff in error, I believe said instruction No. 11 to be correct and without error. The law in brief is, if there is evidence upon a point in the case that is material, the jury should so find and answer accordingly, as the same may be determined by them. And if the evidence upon said point would enable the jury to answer differently and intelligently, then the answer, "We do not know," would be error; otherwise, not. If the rule was otherwise, then the jury would be compelled to violate their oaths and answer questions without any evidence whatever.

In view of the evidence, instruction No. 6 is not error. The evidence established the fact that the panel east of gate had been out of repair for a long time prior to the death of the horses, in many ways, and amounted to no fence; that the top wire was slack and hung below the second wire; and that the fence at that point was not to exceed three feet high, and all the wires slack; and that horses could step over without trouble. The evidence shows that the fence at a point eight rods east of gate, where one horse got over, was without top wire, it having been broken six weeks prior to the death of the horses; and that the fence at that point was not to exceed three feet in height after the wire was broken. And it was in the same condition all the time up to the death

of the horses. In the case at bar, the verdict is fully sustained by the testimony. See 30 Kas. 465; 38 id. 128.

Opinion by GREEN, C.: W. J. Shelley sued the Union Pacific Railway Company to recover as damages the value of two horses alleged to have been killed by the negligence of the railway company in the operation of its road, and in not exercising due care and diligence in keeping the fence which inclosed its right-of-way in repair at the place where the animals strayed upon the track and were killed. The jury returned a verdict of $250 damages and $50 attorneys' fees, and judgment was rendered thereon. The railway brings the case here upon several assignments of error.

It is first claimed that there was no demand made for payment of the loss 30 days before suit was brought, in accordance with the provisions of the statute. The plaintiff testified that he demanded pay for the horses of the station agent of the railway company, at Wamego. The language used was: "I went to Mr. Haacke and told him that I wanted to make a demand for the horses that were killed, that they would weigh about 1,100 and 1,200, and that they were worth $300." He further testified, that the agent took it down, and then walked off and said, "All right." It is contended that this language did not amount to a demand, and that the agent of the railway company did not so regard it; that when the plaintiff told the agent he wanted to make a demand, and the latter said "All right," he meant, "You can make your demand;" but that it was not the understanding of the agent that a demand was in fact made. We think the language of the plaintiff was sufficient to apprise the agent of the nature of his claim for damages for the stock killed. The agent must have so understood it, because he took it down. If the plaintiff was only expressing a desire to make a demand, the agent was under no necessity of noting it. The object of the law is to apprise the company of the claim the party makes for damages, and thus give an opportunity to settle it. This, it seems, was done, because it ap-

pears from the evidence of the claim agent, who testified in the case, that the claim of the plaintiff for damages came into his hands for the loss of the two horses killed on the 7th day of May, 1889. This corresponds with the allegations in the plaintiff's bill of particulars; and the railroad company must have considered what the plaintiff said to the agent a demand.

The second assignment of error is in the court's giving the following instruction:

"The special findings of fact submitted to you, you will answer truthfully, according to the evidence, and if there is any of these questions of fact that you are unable to answer solely because there was no evidence submitted to you, and by which you may be directed, you may answer the same, that you do not know."

The jury had nine special questions submitted to them. Three of the questions and answers returned were as follows:

"Ques. 4. Was the brace knocked out of its position in the fence just east of the gate by the horse getting over the fence at that point? Ans. Do not know."

"Q. 6. Has there been any work of any kind done on the panel just east of the gate, since the date of the accident, except to replace the brace? A. Do not know."

"Q. 8. Did the ground on either side of the fence, at the point eight rods east of the gate, have the appearance of a horse with shoes on having jumped over the fence at that point? A. Do not know."

It is urged by the counsel for the railroad company that the jury was wrongfully influenced by this instruction, and, by reason of this instruction, the jury only answered six out of the nine questions submitted to them. We are inclined to the opinion that the instruction should not have been given. While the language is guarded, and the jury are told that if they are unable to answer any of the questions solely because there was no evidence submitted to guide them, they were at liberty to say they did not know, still it may have encouraged the jury to return negative answers. If there is no evidence concerning special questions, courts should not submit

them to juries. In this case, however, we do not think the instruction and the failure to properly answer the special questions prejudiced any of the rights of the railway company. The question of when the brace just east of the gate was knocked out of position was not very material. There was evidence that the fence was in a bad condition, and had been for some weeks before the accident. The sixth question was immaterial. The real question was the condition of the fence at the time of the accident. The repairs made afterward would throw but little light upon the real issue. The eighth question was of no essential consequence. There was no evidence that the horses killed had shoes on.

The third assignment of error upon which a reversal is asked is the sixth instruction of the court, which reads:

"If you believe from the evidence that before the commencement of the action the plaintiff was the owner of the animals mentioned in his bill of particnlars; that said animals were tied in a stable near the railroad track; that said animals broke their fastenings and jumped over the fence of the defendant inclosing the railroad right-of-way, at places where the top wire of the fence was slack or broken, or the fence was otherwise out of repair; that such wire had been slack or broken or the fence out of repairs long enough before, so that the defendant, in the exercise of ordinary care, might have known the condition of the fence and repaired the same ; that the animals thereupon got upon the track of the defendant, and were then killed by the cars or engines of defendant in the operation of its road; that the said injury occurred in Pottawatomie county, in the state of Kansas; that the plaintiff demanded payment of a ticket or station agent of the defendant for the value of the animals killed, at least 30 days before the commencement of this action, and that the defendant has not paid for the same, then you will find for the plaintiff for the injury to both animals; otherwise you will find for the defendant."

The portion of the instruction of which complaint is made is in regard to the condition of the fence at the time and place where the horses crossed onto the right-of-way. The court might have told the jury what constituted a legal fence, but

43—49 ᴋᴀs.

we do not think the jury was misled. It was conceded by the plaintiff that at one time the railway company had inclosed its right-of-way with a legal fence; but it was claimed that the fence was out of repair and had been in such a condition for such a length of time that the company ought to have known that it was in no condition to turn stock from its right-of-way. There was evidence that the top wire was slack; at one point not over 28 inches from the ground; at another place not to exceed three feet; and horses could step over it without much effort. In view of this evidence, we do not think there was any error in the court's giving the sixth instruction.

It is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.